AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
Jesus Pujol Hernandez,
Miguel Marquez Romero, and
Paulo Sabon Montero

*Defendant(s)*

Case No. 2:25-mj-1093-KCD

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 17, 2025 in the county of Collier in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 18 U.S.C. § 1958 | Use of interstate commerce facilities in the commission of murder-for-hire |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

/s/ Ethan Paszko
*Complainant's signature*

Special Agent Ethan Paszko, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/17/25

*Judge's signature*

City and state: Fort Myers, Florida

Kyle C. Dudek, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Ethan Paszko, being duly sworn, do hereby state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since April 2023. I am currently assigned to the FBI Miami Division and the South Florida High Intensity Drug Trafficking Area ("HIDTA") Task Force. I have participated in multiple narcotics investigations and arrests for violations of Title 21, United States Code. These investigations have involved debriefing defendants, witnesses, and informants, conducting surveillance, assisting in court ordered interceptions, executing search warrants, seizing narcotics, and making arrests for narcotics-related offenses. I am familiar with the methods of use, effects, distribution, appearance, and methods of manufacture and transportation of controlled substances.

2. I submit this affidavit in support of a criminal complaint and arrest warrant charging that at least on or about April 17, 2025, Miguel MARQUEZ Romero ("MARQUEZ"), Paulo SABON Montero ("SABON"), and Jesus Pujol HERNANDEZ ("HERNANDEZ"), did use and conspire to use interstate facilities with intent that a murder be committed in violation of 18 U.S.C § 1958.

3. The facts in this affidavit come from my personal observations of this investigation, my training and experience, and information obtained from recorded phone calls. The conversations recorded on the recorded phone calls were conducted in Spanish and subsequently have been translated. This affidavit is intended to show

merely that there is sufficient probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4. On April 16, 2025, MARQUEZ, who is known by law enforcement to utilize cell phone number (239) 888-5600 (“x5600”), called SABON, who is known by law enforcement to utilize cell phone number (561) 400-9477 (“9477”). During that call, MARQUEZ told SABON that a buddy wanted them to get rid of someone by killing them. MARQUEZ explained to SABON that they would make over $10,000 and that they would meet with the third party brokering the plan to murder the individual, tomorrow, April 17, 2025. The third party brokering the plan was later identified by law enforcement as HERNANDEZ. MARQUEZ further explained the motivation behind the request to murder the victim, and SABON said that they would have to get paid upfront to carry out the murder, to which MARQUEZ concurred. At the conclusion of the call, MARQUEZ and SABON agreed to meet HERNANDEZ the next day to discuss the plan further. This call was recorded.

5. Following the above phone call, law enforcement arrived at MARQUEZ’s known address, 7533 Campania Way, Naples, FL 34104, and observed a vehicle that is associated with MARQUEZ present at the address. Law enforcement maintained constant surveillance of MARQUEZ’s vehicle and residence.

6. On April 17, 2025, at approximately 8:51 a.m., MARQUEZ, using x5600, called HERNANDEZ, who is known by law enforcement to use (239) 378-

2085 (“x2085”). During that phone call, MARQUEZ told HERNANDEZ that he was ready and active. HERNANDEZ said that they needed to see each other and asked MARQUEZ if he could meet around 10:00 a.m. that day, to which MARQUEZ agreed. This call was recorded.

7. On April 17, 2025, at approximately 9:15 a.m., law enforcement observed MARQUEZ exit his apartment, enter the vehicle that is associated with him, and begin driving. Law enforcement subsequently followed MARQUEZ from his residence to 1373 Wildwood Lakes Blvd, which is another apartment complex. While at the location, MARQUEZ met with Individual A in the parking lot and spoke to him. Individual A was seated inside another car.

8. On April 17, 2025, at approximately 9:24 a.m., MARQUEZ, using x5600, called SABON, using x9477. MARQUEZ told SABON that he was with Individual A, and that at 10:00 a.m., the guy (HERNANDEZ) was coming over to meet and speak with them. SABON then told MARQUEZ to come over. MARQUEZ agreed and said he was on the way. This call was recorded.

9. At approximately 9:25 a.m., law enforcement observed MARQUEZ and Individual A travel in their vehicles to 3027 53rd Street SW, Naples, FL, which law enforcement confirmed was SABON’s residence. MARQUEZ and Individual A arrived at approximately 9:40 a.m. and were greeted by SABON. The men engaged in conversation outside and entered the residence. Below are photographs that law enforcement captured of the three men standing outside of the location.





10. On April 17, 2025, at approximately 10:13 a.m., HERNANDEZ, using x2085, called MARQUEZ, using x5600. MARQUEZ told HERNANDEZ that he was at Golden Gate with his brothers. HERNANDEZ asked MARQUEZ what he would like to do. MARQUEZ replied that they need to see each other so that HERNANDEZ can meet his brothers (SABON and Individual A). HERNANDEZ asked MARQUEZ to send an address to which he agreed. This call was recorded.

11. At approximately 10:18 a.m., 10:21 a.m., and 10:29 a.m., HERNANDEZ and MARQUEZ engaged in several phone calls in an attempt to meet.

HERNANDEZ was unable to locate SABON's house and the men agreed to meet nearby at a Winn-Dixie. These calls were recorded.

12. At approximately 10:25 a.m., law enforcement surveilled MARQUEZ entering his black Mercedes Benz and leaving SABON's house. Minutes later, SABON and Individual A exited the residence and entered Individual A's white Mercedes Benz. Surveillance teams observed MARQUEZ, SABON and Individual A drive to the Winn-Dixie, located at 4849 Golden Gate Parkway, Naples. Surveillance observed all three men exit the two vehicles and meet with HERNANDEZ, who arrived at the Winn-Dixie in his white Infiniti bearing Florida license plate BX03JD. MARQUEZ, SABON, Individual A, and HERNANDEZ greeted each other and began speaking while standing between their vehicles. The conversation continued for approximately ten minutes. At approximately 10:45 a.m., the men entered the three vehicles and began leaving the parking lot. Deputy Sheriffs with the Collier County Sheriff's Office, with the assistance of FBI Special Agents, conducted traffic stops of the three vehicles and detained MARQUEZ, SABON, Individual A, and HERNANDEZ. Law enforcement discovered $2300 in cash inside MARQUEZ's wallet. Additionally, inside the white Mercedes Benz, law enforcement found a full camouflaged facemask with the eyes cut out. Photos of the target subjects meeting at the Winn-Dixie are below.





12. Deputy Sheriffs with the Collier County Sheriff's Office transported all four target subjects to their station to conduct interviews. FBI personnel conducted the first interview with SABON, who was read his *Miranda* rights and requested an attorney. However, prior to requesting counsel, SABON asked the interviewers if the reason he was arrested was because of the conspiracy.

13. Later, SABON reinitiated a conversation with the interviewers and agreed to speak with them without the presence of an attorney. SABON confirmed with FBI agents that he had been hired by MARQUEZ to assist with an operation. SABON stated that MARQUEZ had hired him to do a job and said that they were going to plant cocaine or a gun on the intended target/victim. SABON confirmed that

MARQUEZ also hired Individual A to assist as an extra hand. SABON said that they traveled to the Winn-Dixie to meet with HERNANDEZ, who was in charge of organizing the plot against the intended target/victim. SABON stated that while at the meeting at the Winn-Dixie, HERNANDEZ showed a printed photo of an individual believed to be the intended target/victim to SABON, MARQUEZ, and Individual A. SABON claimed that HERNANDEZ said that he (HERNANDEZ) would take the three of them to The Estates, a location where the intended target/victim works.

14. With this information, law enforcement conducted a secondary search of HERNANDEZ at the Collier County Sheriff's Office station and discovered a printed photograph believed to be of the intended target/victim on HERNANDEZ's person, folded inside the right pocket of his athletic shorts.

## **CONCLUSION**

13. Based on the aforementioned recorded phone calls which demonstrate that MARQUEZ, SABON and HERNANDEZ engaged in conversations related to the financing and planning of a murder, in violation of the laws of the State of Florida, in addition to the meeting between MARQUEZ, SABON and HERNANDEZ, who met for the intended and stated purpose to plan a murder, your affiant respectfully submits that probable cause exists to charge MARQUEZ, SABON, and HERNANDEZ with conspiracy to use interstate commerce facilities in the

commission of murder-for-hire, in violation of 18 U.S.C § 1958(a).[1]

FURTHER AFFIANT SAYETH NAUGHT.

*/s/ Ethan Paszko*
ETHAN PASZKO
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P.4.1 by telephone this 17th day of April, 2025.

______________________________
HONORABLE KYLE C. DUDEK
UNITED STATES MAGISTRATE JUDGE

[1] In § 1958, "facility of interstate or foreign commerce" includes means of transportation and communication. 18 U.S.C § 1958(b)(2). In this case, the facility of interstate or foreign commerce is the telephone communications between the target subjects.